**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA LITTLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC, et al.,<br><br>Defendants. | Case No. 14-cv-01177-EMC<br><br>**RELATED TO**<br><br>Case No. 14-cv-01195-EMC<br>Case No. 14-cv-01196-EMC<br>Case No. 14-cv-01204-EMC<br>Case No. 14-cv-01488-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND** |

The above-referenced case (*Little*) and four related cases (*Stark*, *Rouda*, *Peters*, and *Davis*, respectively Nos. C-14-1488, C-14-1195, C-14-1196, and C-14-1204)[1] were previously part of a multidistrict litigation ("MDL"), in which Pfizer, Inc. and McKesson Corporation were sued on the ground that Plaintiffs had developed type 2 diabetes as a result of their taking Pfizer's prescription medication Lipitor.

Currently pending before the Court is Plaintiffs' request for a remand. According to Plaintiffs, Pfizer's removal of their cases from state to federal court based on the "mass action" provision of the Class Action Fairness Act ("CAFA") was improper. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the motions to remand in all five cases.

---

[1] There are fifty-six named plaintiffs in the *Little* case. In each of the four related cases, there is only one named plaintiff. For ease of reference, the Court shall refer to the plaintiffs in all five cases as "Plaintiffs."

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed their cases in state court in 2014. Pfizer removed the cases to federal court, asserting both traditional diversity jurisdiction (predicated on alleged fraudulent joinder of McKesson) and CAFA mass action jurisdiction. Plaintiffs' cases, along with other cases not before this Court, were subsequently transferred to a MDL.

In November 2016, the judge in the MDL granted motions to remand in the California cases (including but not limited to the cases before this Court). The MDL court determined that it lacked traditional diversity jurisdiction over the cases and that the only possible ground for federal jurisdiction was mass action jurisdiction pursuant to CAFA. The MDL court recommended to the Judicial Panel on Multidistrict Litigation ("JPML") that the actions be remanded to the transferor courts to decide the CAFA mass action issue. The JPML followed that advice and thus the five cases above were transferred back to the Northern District of California.

Before this Court, the parties agreed to a stay pending a decision by Judge Carney of the Central District of California on the CAFA mass action issue. (The transfer of cases from the MDL back to the Central District involved many more plaintiffs – more than four thousand.) In May 2017, Judge Carney issued his decision granting the plaintiffs' motion to remand. Judge Carney subsequently denied Pfizer's request for a stay of further proceedings pending an appeal to the Ninth Circuit. Pfizer has appealed Judge Carney's rulings – filing both a traditional appeal pursuant to 28 U.S.C. § 1291 and an "expedited" appeal pursuant to 28 U.S.C. § 1453(c). The Ninth Circuit has not acted and appears in effect to have denied the § 1453(c) appeal. *See* 28 U.S.C. § 1453(c)(4) (providing that, "[i]f a final judgment on the appeal under paragraph (1) is not issued before the end of the period described in paragraph (2), including any extension under paragraph (3), the appeal shall be denied").

In June 2017, this Court declined to stay its own cases pending Pfizer's appeals. It further ordered Pfizer to show cause as to why there should not be a remand of the five cases. Pfizer has

2

now responded (and McKesson has joined that response),[2] and Plaintiffs have filed a reply.

## II. **DISCUSSION**

A. Section 1332(d)(11)

Under CAFA, district courts have subject matter jurisdiction over certain class actions. In addition, district courts have subject matter jurisdiction over "mass actions" that are deemed to be such class actions. Title 28 U.S.C. § 1332(d)(11) provides as follows:

> (A) For purposes of this subsection and section 1453 [28 U.SC. § 1453], a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.
>
> (B)
>
> (i) As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2) [28 U.S.C. § 1711(2)]) in which monetary relief claims of 100 or more persons **are proposed to be tried jointly** on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).
>
> (ii) As used in subparagraph (A), the term "mass action" shall not include any civil action in which –
>
> . . . .
>
> (II) the claims are joined upon motion of a defendant;
>
> . . . .
>
> (IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

28 U.S.C. § 1332(d)(11) (emphasis added). As reflected by the bolded language above, one critical component of the mass action provision that is that there must be a proposal to try jointly the monetary claims of 100 or more plaintiffs.

Ninth Circuit case law has provided some guidance as to what constitutes a proposal for a

---

[2] Although Pfizer has filed a response in each of the cases before the Court, the responses are largely the same.

3

joint trial. For example:

- The proposal for a joint trial *cannot* be made by the defendant. *See Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (noting that "§ 1332(d)(11) specifically provides that the term mass action shall not include any civil action in which . . . the claims are joined upon motion of a defendant[;] Congress anticipated, in other words, that defendants like Dow might attempt to consolidate several smaller state court actions into one mass action, and specifically directed that such a consolidated action was not a mass action eligible for removal under CAFA") (internal quotation marks and emphasis omitted).

- "[P]laintiffs are the 'masters of their complaint' and do not propose a joint trial simply by structuring their complaints so as to avoid the 100-plaintiff threshold." *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014) (en banc); *see also Briggs*, 796 F.3d at 1050 (quoting Eleventh Circuit decision for the proposition that "'plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for or otherwise proposing joint trial in the state court'").

- A proposal for a joint trial need not be explicit; "implicit proposals may trigger CAFA's removal jurisdiction." *Briggs*, 796 F.3d at 1048. Nevertheless, "[a] proposal for purposes of CAFA's mass action jurisdiction, even an implicit proposal, is a 'voluntary and affirmative act,' and an 'intentional act.' It is 'not a mere suggestion' [*e.g.*, conduct suggesting a joint trial is insufficient], and it is not a mere prediction." *Id.*

- "[A] request for a joint trial 'must be made to a court that can effect the proposed relief.'" *Id.*

B. <u>JCCP Proceedings</u>

Pfizer takes the position that a sufficient number of proposals for a joint trial (*i.e.*, 100 or more) were made in state court proceedings. The critical state court proceedings relate to a Judicial Council Coordinated Proceeding ("JCCP"). The relevant background on the JCCP is as follows:

4

- On August 16, 2013, 3 plaintiffs who had filed Lipitor actions in state court asked the California Judicial Council to have their cases coordinated in a JCCP.
- On September 25, 2013, 21 plaintiffs filed an amended coordination petition. On December 6, 2013, the Judicial Council granted the coordination petition but included only the original 3 plaintiffs.
- On January 13, 2014, the judge presiding over the JCCP granted an add-on petition, bringing the number of plaintiffs in the JCCP up to 7 total. Subsequently, another add-on petition was granted, which brought the total number of plaintiffs in the JCCP up to 9. No additional plaintiffs have been added to the JCCP. Thus, there are only 9 plaintiffs in the JCCP.
- However, there are other plaintiffs who have asked to be added to the JCCP (but no ruling was ever made). If those plaintiffs are counted, then altogether there are 65 plaintiffs who are in the JCCP or who have asked to be in the JCCP. (The 65 includes all 21 plaintiffs who filed the amended petition for coordination on September 25, 2013.)

C.  Judge Carney's Decisions

As noted above, Judge Carney (in the Central District of California) granted the plaintiffs' motions to remand. In the cases before him, he concluded that, while there had been some proposals for a joint trial by some plaintiffs via the JCCP, those plaintiffs numbered fewer than 100.

More specifically, there were 65 plaintiffs who had proposed a joint trial − through the original or amended petition for a JCCP and through add-on petitions following coordination. Those plaintiffs had "voluntarily and affirmatively" proposed a joint trial. Carney Op. No. 1, at 11; *see also* Carney Op. No. 1, at 9-10 (noting that the amended petition for a JCCP "repeatedly noted the need to avoid inconsistent judgments and rulings on issues of liability"; there was no limitation to pretrial matters).

But Judge Carney refused to consider the thousands of other plaintiffs who had filed similar suits and whom the 65 plaintiffs argued to the state court should be added to the

coordinated proceedings.[3] "[A]bsent add-on petitions or similar affirmative actions or definitive commitments by [the thousands of] plaintiffs or their attorneys, they have not proposed a joint trial." Carney Op. No. 1, at 11.

Judge Carney acknowledged that at least some of the thousands of plaintiffs were represented by the same attorneys representing the 65 plaintiffs. But he refused to impute the joint trial proposal of the 65 plaintiffs to those other plaintiffs.

> [I]t is the identities and actions of the clients, not that of the attorneys, that matters. JCCP Counsel have not acted on *behalf* of any plaintiffs beyond the aforementioned sixty-five – JCCP Counsel have merely represented that they anticipate many additional, unspecified cases will be coordinated. Neither the actions of the sixty-five plaintiffs nor JCCP Counsel can be imputed to the remaining plaintiffs here.

Carney Op. No. 1, at 13 (emphasis in original).

Pfizer protested that numerous plaintiffs beyond the 65 had in fact proposed a joint trial because, in the civil cover sheets attached to their complaints, they checked the box stating that the case was "'complex' pursuant to California Rule[] of Court 3.400 because [it was] subject to '[c]oordination with related actions pending in one or more courts in other counties, states, or countries, or in federal court.'" Carney Op. No. 1, at 14 (quoting civil cover sheet). But Judge Carney was not persuaded: "[T]hese actions are all administrative in nature and merely alert the clerk's office to the *possibility* of coordination in order to assist with case sorting and management. They do not constitute voluntary and affirmative acts by each plaintiff to be part of and bound by a proposal for a joint trial." Carney Op. No. 1, at 14 (emphasis in original).

Judge Carney also underscored that there are plausibly

> many legitimate reasons for not wanting a joint federal trial. For example, some plaintiffs might seek to distance themselves from those with seemingly weaker claims or from those who will be preoccupied with defenses unique to them. Other plaintiffs who

---

[3] At a February 2014 status conference before Judge Johnson, the plaintiffs in the coordinated proceeding advised that, as of the previous day, there were 54 cases in California with more than 1,800 plaintiffs in the complaints. The plaintiffs also submitted a table of the cases to Judge Johnson and indicated that they wanted to get the cases added on to the coordinated proceeding as soon as possible. *See* Resp. at 4-5; *see also* Docket No. 1-8 (table submitted to Judge Johnson). Three of the five cases before this Court (Rouda, *Peters*, and *Davis*) were listed on the table. *Stark* was not listed on the table because it was not filed until after the status conference.

6

> have suffered more severe injuries or consequences, such as stroke, blindness, and amputation, or who are bringing suit on behalf of a deceased family member, may not wish to have their claims tried jointly with patients who have had milder injuries or consequences. The Court will not speculate, nor base its jurisdictional decision, on whether thirty-five or more plaintiffs will likely take voluntary and affirmative action to be part of and bound by a proposal for a joint trial.

Carney Op. No. 1, at 14-15.

After Judge Carney granted the plaintiffs' motions to remand, Pfizer moved for a stay pending appeal of the decision to the Ninth Circuit. Judge Carney denied the stay motion. In his decision, he reiterated that

> [i]t is not sufficient that less than 100 plaintiffs state that *other* plaintiffs will want a joint trial as well. Every one of the 100 plaintiffs must take affirmative action to be part of and be bound by a proposal for a joint trial. To conclude otherwise would be unfair to those plaintiffs who want nothing to do with a joint trial, and unfair to the state of California, which has a significant interest in addressing injuries allegedly suffered by its citizens and setting the appropriate level of liability for companies conducting business within its borders.

Carney Op. No. 2, at 5 (emphasis in original).

Judge Carney acknowledged Pfizer's argument that, "in *Corber*, the Ninth Circuit [en banc] 'held that mass action jurisdiction extended both to other cases filed by the counsel who filed the coordination petition, and even to cases filed by Plaintiffs' counsel with no involvement in the petition at all.'" Carney Op. No. 2, at 5. But he was not convinced, pointing out that

> [t]he issue of whether the 100-plaintiff threshold had been met was never raised, argued, or addressed in *Corber*. *Corber* only analyzed the narrow question of whether the language of the coordination petitions was sufficient to constitute proposals for a joint trial. *Corber* concluded that because the petitions sought coordination "for all purposes" and stressed the need for coordination and avoiding inconsistent decisions on issues of "liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants," the petitions proposed a joint trial.

Carney Op. No. 2, at 6. Judge Carney added that, while "*Corber* never addressed the significance" of oral representations about additional cases that would or would likely be coordinated,

> *Briggs* [a subsequent Ninth Circuit decision] did shed light on this issue, explaining that a proposal for a joint trial at the very least must be a voluntary and affirmative act. The Court therefore

7

> concluded that under *Briggs*, JCCP Counsel's oral representations were merely predictions or suggestions, which are insufficient to trigger the 100-plaintiff threshold.

Carney Op. No. 2, at 6.

Finally, Judge Carney reiterated that the fact that "the majority of plaintiffs checked a box on their civil cover sheets indicating that the case would be coordinated" was not enough to meet the 100-plaintiff threshold. Carney Op. No. 2, at 7. "[T]hese actions fall short of the voluntary and affirmative action standard laid out in *Briggs*. They are merely administrative actions. They are not clear and definitive commitments by the plaintiffs to be part of and bound by a proposal for a joint trial." Carney Op. No. 2, at 7.

D. Pfizer's Arguments[4]

In arguing against remand in the instant cases, Pfizer rehashes arguments made to Judge Carney and criticizes Judge Carney's reasoning. None of Pfizer's arguments is compelling.

For example, according to Pfizer, the plaintiffs in the five cases before this Court did not have to make a proposal for a joint trial themselves in order for them to be counted as part of the 100 plaintiffs needed for the CAFA mass action provision. Pfizer argues that *Corber* is dispositive on this point: "*Corber* summarily reversed the remand orders not only in cases identified in the coordination petition, but also in all other related cases filed in California, regardless of whether or not the plaintiffs at issue had filed a petition for coordination or add-on petition at the time of removal." Resp. at 10 (emphasis omitted). The problem with this argument is that, as Judge Carney explained, "[t]he issue of whether the 100-plaintiff threshold had been met was never raised, argued, or addressed in *Corber*. *Corber* only analyzed the narrow question of whether the language of the coordination petitions was sufficient to constitute proposals for a joint trial." Carney Op. No. 2, at 6.

Pfizer tries to avoid this problem by arguing that "the fact that the issue [of numerosity] was not addressed [in *Corber*] cuts against Plaintiffs, not for them: the issue was not addressed because there was no basis for plaintiffs to dispute from the record that the proposal for joint trial

---

[4] As noted above, McKesson has joined in Pfizer's arguments.

8

applied to all plaintiffs." Resp. at 11. But this argument is far from persuasive. It is entirely speculative as to why the plaintiffs in *Corber* did not argue that the 100-plaintiff threshold had not been met.

Pfizer contends that, even if *Corber* were not dispositive, the Court still should not remand the cases back to the state courts as Judge Carney did because his rulings are flawed. Pfizer argues that the Ninth Circuit simply defines a proposal (for a joint trial) as a voluntary, affirmative, and intentional act, *see Briggs*, 796 F.3d at 1048 (noting that a mere suggestion or a mere prediction is not enough), and that Judge Carney implicitly went against this standard by holding that an act that is administrative in nature is not enough to be a proposal. *See* Resp. at 12. This argument, however, mischaracterizes Judge Carney's decision. Judge Carney did use the phrase "administrative in nature" but in the following context. Pfizer had argued that numerous plaintiffs had proposed a joint trial by checking the box (on the civil cover sheets attached to their complaints) that the case was complex because it was subject to coordination with related pending actions. Judge Carney rejected the argument, stating as follows: "[T]hese actions are all administrative in nature and merely alert the clerk's office to the *possibility* of coordination in order to assist with case sorting and management. They do not constitute voluntary and affirmative acts by each plaintiff to be part of and bound by a proposal for a joint trial." Carney Op. No. 1, at 14. He further stated: "[T]hese actions fall short of the voluntary and affirmative action standard laid out in *Briggs*. They are merely administrative actions. They are not clear and definitive commitments by the plaintiffs to be part of and bound by a proposal for a joint trial." Carney Op. No. 2, at 7.

As should be clear from this context, Judge Carney's decision did not turn on whether checking the box was administrative in nature. Rather, Judge Carney's point was that there was not a sufficiently clear proposal for a joint trial. This makes sense because, even if, by checking the box, the plaintiffs were asking to be part of the coordinated proceeding before Judge Johnson, that does not mean that they were thereby proposing a joint trial (in contrast to the plaintiffs who had filed the original and amended petitions for coordination and who, in those papers, referred to, *e.g.*, inconsistent judgments). *Cf. Corber*, 771 F.3d at 1223-24 (noting that petitions for

coordination under section 404 are not "*per se* proposals to try cases jointly for purposes of CAFA's mass action provision"; evaluating the language of the petitions for coordination to see whether there was a proposal for a joint trial).  Indeed, as Judge Carney noted, "Judge Johnson repeatedly stated [at the February 2014 status] that the JCCP cases 'can be sent back for trial,' so it is far from clear whether Judge Johnson's order [regarding add-on cases] is even proposing a joint trial . . . ."  Carney Op. No. 1, at 15-16.

Pfizer's final argument is that a proposal for a joint trial made by one plaintiff can in effect bind another plaintiff even if he or she has not made a proposal for a joint trial; in other words, the consent of the latter plaintiff is not required.  But Pfizer's "no consent" argument is problematic because it fails to take into account the Ninth Circuit case law emphasizing that a plaintiff is the master of his or her complaint.  *See Corber*, 771 F.3d at 1223 (stating that "plaintiffs are the 'masters of their complaint' and do not propose a joint trial simply by structuring their complaints so as to avoid the 100-plaintiff threshold"); *Briggs*, 796 F.3d at 1050 (quoting Eleventh Circuit decision for the proposition that "'plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for or otherwise proposing joint trial in the state court'").  As Judge Carney pointed out, there are many legitimate reasons why a plaintiff would not want his or her case jointly tried with other plaintiffs' cases.

Pfizer's "no consent argument" is also problematic because, as Judge Carney recognized, the legislative history suggests consent *is* needed.  *See* Carney Op. No. 1, at 12 n.4 (quoting Senate Report stating that "'any civil action in which 100 or more *named parties seek to try their claims for monetary relief together will be treated as a class action for jurisdictional purposes*'") (emphasis in original).  Furthermore, as Plaintiffs point out, in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736 (2014), the Supreme Court indicated that "a 'mass action' must involve monetary claims brought by *100 or more persons who propose to try those claims* jointly as named plaintiffs." *Id.* at 739 (emphasis added; ultimately holding that "a suit filed by a State as the sole plaintiff [does not] constitute[] a 'mass action' under CAFA where it includes a claim for restitution based on injuries suffered by the State's citizens").

10

///

///

///

### III. <u>CONCLUSION</u>

The Court finds Judge Carney's reasoning persuasive and rejects Pfizer's arguments for the reasons stated above. Accordingly, the Court grants Plaintiffs' motions to remand the five cases before it back to the state courts from which they were removed.

The Clerk of the Court is ordered to close the files in these cases.

**IT IS SO ORDERED**.

Dated: August 9, 2017

_____
EDWARD M. CHEN
United States District Judge